**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

PAUL PALMER,
individually and on behalf of those
similarly situated,

Plaintiff,

v.

STATE OF MICHIGAN,

and,

COMMUNITY MENTAL HEALTH
AUTHORITY OF CLINTON, EATON
& INGHAM COUNTIES,

Defendants.

Case No. 1:22-cv-00090

Hon.

---

**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff, Paul Palmer (Plaintiff) hereby sues the State of Michigan and the Community Mental Health Authority of Clinton, Eaton, and Ingham Counties (Defendants), and states as follows:

**INTRODUCTION**

1. Plaintiff brings this lawsuit against Defendants to vindicate his rights as a person with a disability. Plaintiff has been denied the right to attend and participate in meetings of the Community Mental Health Authority of Clinton, Eaton, and Ingham Counties (CMH), in violation of Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101- 12213, and Article III of the Michigan Persons with Disabilities Civil Rights Act, MCL § 37.1101, *et seq.* (PDCRA).

Based on these violations, Plaintiff seeks a declaratory judgment, preliminary and permanent injunctive relief, attorney's fees and costs, and any other available relief.

2. Plaintiff is an appointed member of the Board of Commissioners for Defendant CMH. He was appointed in 2010 to represent Ingham County.

3. Plaintiff also suffers from Cerebral Palsy, which significantly limits him in the major life activities of walking, speaking, and breathing.

4. CMH is subject to the Michigan Open Meetings Act (OMA). MCL § 15.261, *et seq.* The OMA generally requires all meetings of public boards to be held in-person and to be open to the public. However, the OMA does provide for an exception for active-duty military members to attend and participate in public meetings remotely by virtual means.

5. Because of the COVID-19 pandemic, Defendant State of Michigan enforced a statute allowing, and in some cases requiring, all public meetings subject to the OMA to be held remotely by virtual means. MCL § 15.263. The statute also provided a specific exception to allow individuals with medical conditions to participate in public meetings remotely, including allowing board members to be counted as part of a quorum and to vote in such meetings even when appearing remotely. MCL § 15.263(2)(d)(8).

6. As of December 31, 2021, the COVID-19 exemptions have expired. All members of Michigan's public boards are now required to attend meetings in-person, with the sole exception of active-duty military. People with disabilities, including those who are immunocompromised or who have severe mobility limitations, are now required to attend public meetings in-person. Exhibit 1, Attorney Letter. Defendant CMH has ordered Plaintiff to return to attending all public board meetings in-person.

7. Because of his disability, Plaintiff is unable to participate in a public meeting while wearing a mask. He is unable to communicate while wearing a mask. Therefore, even if he attends

meetings in-person, he will be unable to participate or voice his opinion on the issues being discussed. In addition, because of his underlying health conditions, Plaintiff is susceptible to severe disease if he is exposed to COVID-19. Plaintiff has therefore been excluded from participating in and voting at CMH meetings, solely because he is a person with a disability.

8. Throughout the COVID-19 pandemic, Defendants have employed technology that has allowed Plaintiff, and those similarly situated, the opportunity to participate in public board meetings remotely, to avoid putting their health or lives at risk. The ADA requires Defendants to continue to offer this modification, in this case the use of an already deployed technology, to ensure people with disabilities, including Plaintiff, are not excluded from participation in public board meetings. Doing so imposes no additional burden on Defendants, as public board meetings were operated by remote means for over a year with no issue.

9. By ignoring the needs and dignity of Plaintiff and those similarly situated, Defendants have treated them as second-class citizens, unfairly and unjustly ignored their basic rights to security, equality, and dignity, and have unreasonably restricted their fundamental right to participate in public board meetings in a meaningful way. Accordingly, Plaintiff seeks declaratory relief stating that Defendants' conduct violates the ADA and the PDCRA, as well as injunctive relief requiring Defendants to modify their programs and provide appropriate auxiliary aids to allow Plaintiff and those similarly situated to participate in public board meetings remotely by virtual means, just as Defendants have done throughout the COVID-19 pandemic.

## JURISDICTION

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because Plaintiff's claims arise under the ADA. In addition, the Court has jurisdiction over Plaintiff's claims for declaratory relief pursuant to 28 U.S.C. §§ 2201-02 and jurisdiction over Plaintiff's claims for injunctive relief pursuant to 15 U.S.C. § 1116.

11. This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367, as the claim arises from the same set of operative facts as Plaintiff's federal claim.

12. Venue is proper in the Western District of Michigan, Southern Division under 28 U.S.C. § 1391 because Plaintiff is situated within this District, and because the events, acts, and omissions giving rise to Plaintiffs' cause of action occurred in this District.

**PARTIES**

13. Plaintiff Paul Palmer is a member of the Board of Commissioners for Defendant CMH. He has been a member of the CMH board since 2010. He also suffers from Cerebral Palsy.

a. Plaintiff resides in Lansing, MI.

b. Plaintiff relies on a wheelchair for mobility and is only able to walk and stand for very brief periods of time due to Cerebral Palsy.

c. Cerebral Palsy severely restricts Plaintiff's ability to speak and communicate, making it difficult for others to understand what he is saying. He is completely unable to communicate while wearing a cloth or medical mask.

d. Plaintiff's breathing is also restricted due to Cerebral Palsy.

e. Plaintiff is at high-risk of severe illness or death if he is exposed to COVID-19 because of Cerebral Palsy.

f. Plaintiff now faces the impossible choice of attending CMH meetings without a mask so that he may participate meaningfully, a choice which risks exposure to COVID-19; or, alternatively, not participating in CMH meetings, a choice that is detrimental to Plaintiff's and the public's interests.

g. Plaintiff would like to continue to attend CMH board meetings virtually to allow

him to participate and vote in a meaningful way, and to avoid putting himself and others at risk of exposure to COVID -19.

14. Defendant State of Michigan enforces the laws of the State of Michigan, including the OMA.

a. As of December 31, 2021, Defendant State of Michigan has reverted to requiring all members of public boards to attend meetings in-person to be counted toward a quorum and to vote, with no modification or auxiliary aid available for people with disabilities.

15. Defendant Community Mental Health Authority of Clinton, Eaton, & Ingham Counties is an agency that has been delegated authority by the State of Michigan to provide support and resources to members of the community suffering from mental illness.

a. Defendant CMH is a public body created by the Michigan Mental Health Code, MCL § 330.1001, *et seq.*

b. The Michigan Mental Health Code delegates authority to Defendant CMH to provide mental health services and programs for the people of Clinton, Eaton, and Ingham Counties.

c. Defendant CMH strives to provide "[a] community in which any person with a mental health need has access to a wide range of resources to allow him or her to seek his or her desired quality of life and to participate, with dignity, in the life of the community, with its freedoms and responsibilities."[1]

d. Defendant CMH is governed by a 12-member board of Commissioners, made up of members of the community representing each of the three counties under Defendant CMH's authority.

[1] Community Mental Health Authority of Clinton, Eaton, and Ingham Counties - About Us (ceicmh.org)

e. Defendant CMH holds board meetings on the third Thursday of every month. These meetings are subject to the OMA, which is enforced by Defendant State of Michigan.

f. Throughout the pandemic, Defendant CMH allowed Plaintiff to attend and participate in such board meetings remotely, by virtual means, as a reasonable modification to its program to allow Plaintiff to continue to participate in board meetings, while protecting his life and well-being.

g. Because the OMA COVID-19 exemptions have expired, Defendant CMH will now require all board members, including Plaintiff and those similarly situated, to attend board meetings in-person. Exhibit 1.

**FACTUAL ALLEGATIONS**

16. Plaintiff Paul Palmer represents Ingham County on the Board of Commissioners for CMH.

17. Plaintiff suffers from Cerebral Palsy. As a result, he depends on a wheelchair for mobility. Plaintiff also experiences significant difficulty speaking because of his medical condition.

18. Plaintiff is also at high-risk of severe illness or death if he is exposed to COVID-19 because of Cerebral Palsy.

19. Plaintiff previously attended CMH meetings in-person as required by OMA.

20. In March 2020, the COVID-19 pandemic began to cause major disruptions to day-to-day life across the country. In response, the Michigan legislature amended the OMA to allow for remote participation in virtual meetings by board members.

21. As a result of the amendments to the OMA, Plaintiff has attended all CMH board meetings by virtual means throughout the pandemic until December 31, 2021.

22. Plaintiff is unable to communicate with others while wearing a medical or cloth mask. Allowing him to attend by remote means during the COVID-19 pandemic has allowed him to meaningfully participate and vote in CMH board meetings.

23. As of Midnight, on December 31, 2021, the OMA exceptions allowing remote participation in public board meetings by individuals with a medical need expired.

24. Plaintiff subsequently received a notice confirming that Defendants will now require him to attend board meetings in-person to be counted toward the quorum and to vote.

25. The OMA still allows the public to attend public board meetings by remotely by virtual means.

26. The OMA still allows active-duty military members to attend public board meetings remotely by virtual means.

27. Despite the expiration of the OMA exceptions, the COVID-19 pandemic continues to disrupt daily life for Michiganders, with many state and private employees still working remotely to mitigate the spread of the novel virus.

28. The National Institute of Health recognizes Cerebral Palsy as a condition that is at high risk for a serious case of COVID-19.[2]

29. Furthermore, because of his disability, Plaintiff is unable to communicate with others while wearing a cloth or medical mask.

30. As a result of Defendants' failure to modify their programs, Plaintiff continues to be excluded from participating and voting at CMH public board meetings. Modifying these practices to allow Plaintiff and those similarly situated to participate in public board meetings imposes no burden on Defendant, as this modification is already being offered to active-duty

[2] Why individuals with cerebral palsy are at higher risk for respiratory complications from COVID-19 - PubMed (nih.gov)

military members and the public.

31. Defendant CMH held the first board meeting of 2022 on or around January 20, 2022, and due to his limitations, Plaintiff was denied the opportunity to participate in the meeting.

32. Defendants are aware of the ongoing risk posed by the COVID-19 Pandemic, as well as the expiration of the COVID-19 OMA exceptions, but have refused to reasonably modify their programs. As outlined below, the ADA requires Defendants to modify their programs and to provide auxiliary aids to ensure that Plaintiff, and those similarly situated, are not excluded.

**COUNT I**

**Violations of Title II of the Americans with Disabilities Act 42 U.S.C. § 12131 *et seq*.**

33. Plaintiff incorporates the allegations in the preceding paragraphs.

34. The Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213, guarantees qualified individuals an equal opportunity to access the benefits of the services, programs, or activities of a public entity. 42 U.S.C. § 12132.

35. Title II of the ADA mandates, *inter alia*, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

36. In providing aids, benefits, or services, public entities may **not "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others,"** nor may public entities provide qualified individuals with disabilities "an aid, benefit, or service that is not as effective in affording equal opportunity" to gain the same result or benefit as provided to others. 28 C.F.R. § 35.130(b)(1)(ii)-(iii) (emphasis added).

37. Furthermore, such public entities **"shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants,**

**participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity."** 28 C.F.R. § 35.160(b)(1) (emphasis added).

38. Critically, to be effective, the "auxiliary aids and services must be provided in . . . such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 35.160(b)(2).

39. Defendant State of Michigan enforces the laws of the State of Michigan and is therefore a public entity under Title II of the ADA.

40. Defendant CMH is a public body that has been delegated authority by Defendant State of Michigan to provide resources and treatment to individuals with mental illnesses and is therefore a public entity under Title II of the ADA.

41. Public board meetings are a service, program, or activity operated by Defendants.

42. Plaintiff is an individual with a disability under the ADA, as he suffers from a medical condition that impairs him in several major life activities, including walking and standing, speaking, and breathing.

43. Plaintiff is an appointed member of the CMH Board of Commissioners, a public board he has served on since 2010 and is thus a qualified individual entitled to the protections of the ADA.

44. Defendants have failed to meet their obligations to provide Plaintiff and those similarly situated with an opportunity to participate in public board meanings in a manner that is equal to the opportunity provided to others. Defendants continue to fail to employ a readily available, accessible system that would allow Plaintiff and those similarly situated to continue to participate in public board meetings; have refused to provide an auxiliary aid or service; and have failed to make a reasonable modification necessary to allow Plaintiff, and those similarly situated,

to participate in public board meetings.

45. Defendants have violated the ADA. Accordingly, Defendants have excluded and continue to exclude Plaintiff and those similarly situated from participation in and denied them the benefits of or otherwise discriminated against them in, their service, program, or activity of public board meeting participation.

46. Defendants have also failed to employ readily available auxiliary aids to allow Plaintiff to attend and participate in CMH board meetings remotely. Defendants continue to employ auxiliary aids to allow active-duty military members to attend and participate in public board meetings remotely by virtual means. The failure to simply extend this existing auxiliary aid to Plaintiff and those similarly situated violates Defendants' obligations under the ADA.

47. As a result of Defendants' actions, Plaintiff and those similarly situated have suffered and will continue to suffer irreparable harm: they have suffered and continue to suffer from discrimination and unequal access to Defendants' programs, services, or activities of public board meeting participation. If there is no change in the status quo, Plaintiff and those similarly situated will continue to be denied the right to participate in public board meetings.

48. Defendants' failure to meet their obligations to provide Plaintiff and those similarly situated an equal opportunity to participate in public board meetings is an ongoing and continuous violation of the ADA and its supporting regulations. Unless restrained from doing so, Defendants will continue to violate the ADA. Unless enjoined, Defendants' conduct will continue to inflict injuries for which Plaintiff has no adequate remedy at law.

49. The requested modification and auxiliary aid could be implemented with minimal, or no cost given the Defendants' use of remote/virtual systems to conduct public board meetings since the beginning of the COVID-19 pandemic.

50. The ADA authorizes injunctive relief as an appropriate to remedy acts of

discrimination against persons with disabilities. 42 U.S.C. § 12188(a)(1).

51. Plaintiff and those similarly situated are entitled to injunctive relief, as well as reasonable attorney's fees and costs.

**COUNT II**

**Violation of Article III of the Michigan Persons with Disabilities Civil Rights Act MCL § 37.2301 *et seq.***

52. Plaintiff incorporates the allegations in the preceding paragraphs.

53. Article III of the Michigan Persons with Disabilities Civil Rights Act (PDCRA) prohibits any person from denying an individual the full and equal enjoyment of the services, privileges, or advantages of a place of public services because of a disability that is unrelated to the individual's ability to utilize and benefit from those services, privileges, or advantages. *See* M.C.L. § 37.1302.

54. The term "public service" includes an agency managed by or on behalf of the State of Michigan. MCL § 37.1301(b).

55. The PDCRA prohibits state actors, such as Defendants, from denying an individual with a disability "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation or public service because of a disability that is unrelated to the individual's ability to utilize and benefit from the goods, services, facilities, privileges, advantages, or accommodations or because of the use by an individual of adaptive devices or aids." MCL § 37.1302(a).

56. Plaintiff is an individual with a disability as the term is defined in the PDCRA, as he suffers from Cerebral Palsy. MCL § 37.1103(h).

57. Defendants' refusal to accommodate Plaintiff and those similarly situated by allowing participation in public board meetings by virtual and remote means is in direct violation of the PDCRA. In so doing, Defendants continue to deny Plaintiff and those similarly situated full

and equal enjoyment of the right to attend and participate in public board meetings.

58. Defendants already extend this accommodation to the public and active-duty military.

59. If Defendants do not conform their conduct to the requirements of state law, numerous individuals similarly situated to Plaintiffs will be totally excluded from participating in public board meetings for several reasons, including mobility impairments, speech impairments, susceptibility to severe disease due to COVID-19, and other limitations associated with disabilities and medical conditions.

60. The injury suffered by Plaintiff—effective exclusion from participating in public board meetings, as well as the imminent threat to his health and life—has no adequate remedy at law. The harm is immediate and ongoing and can only be cured through injunctive relief ordering Defendant to return to allowing Plaintiff and those similarly situated to attend public board meetings virtually.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court enter judgment in his favor and award them the following relief:

1. A preliminary and permanent injunction prohibiting Defendants from violating the ADA and the PDCRA and requiring them to return to allowing remote and virtual participation in public board meetings by Plaintiff and those similarly situated as a reasonable accommodation for their disability;
2. A declaration that Defendants have and continues to violate the ADA and the PDCRA;
3. A declaration that the ADA preempts the OMA and requires Defendants to provide the requested relief;
4. An award of Plaintiffs' reasonable attorney's fees and costs; and

5. Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

NYMAN TURKISH PC

/s/ Jason M. Turkish
Jason M. Turkish (P76310)
20750 Civic Center Dr., Ste. 290
Southfield, MI 48076
Phone: 248-284-2480
Fax: 248-262-5024
Jason.Turkish@NymanTurkish.com

/s/ Ryan T. Kaiser
Ryan T. Kaiser (P79491)
20750 Civic Center Dr., Ste. 290
Southfield, MI 48076
Phone: 248-284-2480
Fax: 248-262-5024
Ryan.Kaiser@NymanTurkish.com

*Counsel for Plaintiff*

Dated: January 31, 2022

**VERIFICATION**

Paul Palmer, under penalty of perjury of the laws of the United States, states: That he is thee named Plaintiff in the above-styled Verified Complaint, that he has read, is familiar with, and has personal knowledge of the contents of the foregoing Verified Complaint, and that to the best of his knowledge, information, and belief the allegations thereof are true and correct.

______________________
Paul Palmer

Subscribed and sworn before me this
31 day of January 2022

______________________
Notary Public

DEBORAH M. BARCLAY
Notary Public, State of Michigan
County of Ingham
My Commission Expires Jan. 07, 2025
Acting in the County of ________