UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL PALMER,

    Plaintiff,

v.

                                  Case No. 1:22-cv-90

STATE OF MICHIGAN, et al.,

                                  Hon. Hala Y. Jarbou

    Defendants.

_____/

## OPINION

Plaintiff Paul Palmer brings this action under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 et seq., and Article III of Michigan's Persons with Disabilities Civil Rights Act (PDCRA), Mich. Comp. Laws § 37.2301 et seq. The only remaining Defendant is the Community Mental Health Authority of Clinton, Eaton, and Ingham Counties ("CMHA").[1] Before the Court is Plaintiff's "Motion for Temporary Restraining Order and/or Preliminary Injunction." (ECF No. 2.)

### I. BACKGROUND

Plaintiff brought this action on January 31, 2022. He alleges in his verified complaint that he is an appointed member of the Board of Commissioners for the CMHA. He has Cerebral Palsy, which significantly limits his ability to talk, speak, and breathe. (Compl. ¶ 3, ECF No. 1.) Also, his condition puts him at higher risk for respiratory complications from COVID-19.

The CMHA is subject to Michigan's Open Meetings Act (OMA), Mich. Comp. Laws § 15.261 et seq., which generally requires that meetings of public boards be held in person and be open to the public. Plaintiff alleges that, in response to the COVID-19 pandemic, Michigan

---

[1] The Court dismissed the State of Michigan by stipulation on February 4, 2022. (*See* Stipulation & Order, ECF No. 12.)

amended the OMA in March 2020 to allow for remote participation by board members with medical conditions or who were absent due to military duty. However, he contends that the remote participation option for members with medical conditions expired on December 31, 2021. In December, Plaintiff received a notice that, as of January 1, 2022, the only exception for in-person participation is for an absence due to military duty. Consequently, he must attend CMHA meetings in person in order to fully participate and to vote.

Plaintiff contends that in-person attendance poses a risk to his health because he is at high risk of illness or death if he is exposed to the virus that causes COVID-19. Also, wearing a mask is not an option because his condition prevents him from communicating while wearing a mask. He contends that the CMHA held a public meeting on January 20, 2022, but he was "denied the opportunity to participate" in that meeting. (Compl. ¶ 31.) He alleges that the CMHA "refused" to accommodate him by allowing him to participate remotely. (*Id.* ¶ 44.)

According to an affidavit by the CMHA's CEO, Sara Lurie, the CMHA held its meetings virtually in 2020 and 2021. It returned to in-person meetings in January 2022 because the OMA provision allowing virtual meetings expired. (Lurie Aff. ¶ 8, ECF No. 20-2.) And because it is a health provider, the CMHA requires its board members to wear masks at their meetings and to sit eight feet apart.

On January 5, 2022, Plaintiff emailed Lurie, saying, "[I]'m worried about the open meetings act due to my cerebral palsy I'm worried about cov19. When I wear a mask people don't understand me. I want to know my . . . rights." (1/5/2022 Email, ECF No. 20-2, PageID.279.) Two days later, Lurie met with Plaintiff, Plaintiff's friend, and another board member. According to Lurie, Plaintiff "inquired" about virtual participation but "never made a formal request . . . based

2

on a disability or hea[l]th concerns." (Lurie Aff. ¶ 14.) Lurie says that she told Plaintiff that he could "request an accommodation and attend the meeting without a mask." (*Id.* ¶ 15.)

According to Plaintiff, when he spoke to Lurie in January 2022, he told her about his "desire to attend board meetings by Zoom" and "was told that [CMHA] understood [his] disability and need for accommodation but felt it could not allow [him] to attend . . . by Zoom because of the Open Meetings Act." (Pl. Aff. ¶ 17, ECF No. 23-2.) Plaintiff avers that Lurie "did not ask [him] to provide any medical documentation to support [his] request prior to the lawsuit being filed." (*Id.* ¶ 17.)

Plaintiff's account is somewhat supported by the minutes of the CMHA's January 20, 2022, board meeting. At that meeting, the Board Chair expressed concern about the change to the OMA because it created a "difficult situation" for Plaintiff "based on his concern that others may not be able to understand him when speaking with a mask, and therefore, would like to participate virtually." (1/20/2022 CMHA Minutes, ECF No. 20-3, PageID.288.) Further, "[w]hile [Plaintiff] could request an accommodation not to wear a mask at the in-person meetings, that would put his health at risk." (*Id.*) Plaintiff attended this meeting virtually, but he was not able to vote or be counted as part of the quorum.

On February 7, 2022, Lurie received and distributed an opinion from the Michigan Attorney General stating that, notwithstanding the OMA, the ADA requires local boards and commissions "to provide reasonable accommodations, which could include an option to participate virtually, to qualified individuals with a disability who request an accommodation in order to fully participate as a board or commission member[.]" (Atty. Gen. Op. 15-16, ECF No. 11-1.)

3

On February 16, Plaintiff emailed Lurie, stating, "[I] would like to request I would like to ask personally present by zoom."  (2/16/2022 Email, ECF No. 20-2, PageID.280.)  Lurie interpreted this email as Plaintiff's first, formal accommodation request.

On March 9, 2022, the CMHA's Executive Committee met and decided that it would consider Plaintiff's accommodation request after he provided "medical documentation or a letter from [his] physician[.]"  (Lurie Aff. ¶ 24.)  On March 10, Lurie spoke with Plaintiff and told him that she would permit him to participate virtually in March, but she asked him to send "necessary medical documentation for any future requests."  (*Id.* ¶ 27.)  Lurie contends that, upon receipt of this documentation, the Executive Committee "will meet and make a recommendation to the Board of Directors" and then the Board of Directors will need to approve Plaintiff's request.  (*Id.* ¶ 31.)

Plaintiff's motion seeks a preliminary injunction requiring Defendants to allow "Plaintiff and those similarly situated to participate in public board meetings remotely by virtual means[.]" (Pl.'s Mot. for TRO, ECF No. 2, PageID.42.)

## II. PROCEDURAL HISTORY

On February 1, 2022, the Court denied Plaintiff's request for a temporary restraining order because he had not shown that he would suffer irreparable harm before Defendants could be heard in opposition.  (*See* 2/1/2022 Order, ECF No. 7.)  However, the Court ordered the CMHA to respond to Plaintiff's request for a preliminary injunction by February 15, 2022.  The parties subsequently stipulated to extend the response deadline to March 15, 2022, noting that the CMHA had agreed to allow Plaintiff to participate remotely in CMHA meetings for the months of February and March.  (*See* 3/8/2022 Stip. & Order, ECF No. 16.)  After the CMHA filed its response, Plaintiff filed a reply.

4

### III. STANDARD

A preliminary injunction "'is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.'" *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2948 (2d ed. 1995)). The Court considers four factors when deciding whether to grant a preliminary injunction:

(1) whether the movant has a "strong" likelihood of success on the merits;

(2) whether the movant would otherwise suffer irreparable injury;

(3) whether issuance of a preliminary injunction would cause substantial harm to others; and

(4) whether the public interest would be served by issuance of a preliminary injunction.

*McPherson v. Mich. High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997) (en banc).

"These factors are to be balanced against one another and should not be considered prerequisites to the grant of a preliminary injunction." *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000).

### IV. ANALYSIS

**A. Likelihood of Success**

"Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, 'be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" *Mingus v. Butler*, 591 F.3d 474, 481-82 (6th Cir. 2010) (quoting 42 U.S.C. § 12132). "Two types of claims are cognizable under Title II: claims for intentional discrimination and claims for a reasonable accommodation." *Roell v. Hamilton Cnty.*, 870 F.3d 471, 488 (6th Cir. 2017). As to the latter, "[a] regulation implementing Title II requires a public entity to make 'reasonable modifications' to its 'policies,

5

practices, or procedures' when necessary to avoid such discrimination." *Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 749 (2017) (quoting 28 C.F.R. § 35.130(b)(7) (2016)). In addition, a public entity may not "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others[.]" 28 C.F.R. § 35.130(b)(1)(ii). Further, a public entity must "furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." 28 C.F.R. § 35.160(b)(1). "In other words, 'Title II imposes affirmative obligations on public entities and does not merely require them to refrain from intentionally discriminating against the disabled.'" *Wilson v. Gregory*, 3 F.4th 844, 859 (6th Cir. 2021) (quoting *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 910 (6th Cir. 2004)).

Plaintiff contends that the CMHA has not provided appropriate "auxiliary aids or services," or made reasonable modifications to their procedures to allow him to participate in board meetings remotely. Also, it has not given him the same opportunity to participate remotely that it has given to active-duty military members. The Court construes this as a failure-to-accommodate claim.

> To recover on a failure-to-accommodate claim, Plaintiff must show the following: (1) he is disabled; (2) he was "qualified" to take part in the "services, programs, or activities" of the public entity; (3) he was "excluded from participation in" or "denied the benefits of" such "services, programs, or activities"; and (4) this exclusion or denial occurred "by reason of" his disability.

*Keller v. Chippewa Cnty., Mich. Bd. of Comm'rs*, 860 F. App'x 381, 385 (6th Cir. 2021).

"[A]n individualized inquiry is required to determine whether a person has a disability for purposes of [Title II of] the ADA." *Marble v. Tennessee*, 767 F. App'x 647, 652 (6th Cir. 2019). "An individualized inquiry is also required to determine whether an accommodation would be 'reasonable under the circumstances as well as necessary for that person.'" *Id.* at 652

6

(quoting *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 688 (2001)).  In addition, "a covered entity is generally not liable for failing to make reasonable accommodation if the plaintiff did not request accommodation or otherwise alert the covered entity to the need for accommodation." *Id.* However, "a disabled individual is not required to use the specific words 'disability' or 'accommodation' and a covered entity may need to infer that a request is a request for accommodation if 'context' shows that it is meant to compensate for medical restrictions." *Id.* at 653.

Here, there is no dispute that Plaintiff has a disability and that he is qualified to take part in the CMHA's meetings as a board member.  There is also no dispute that he was denied the opportunity to fully participate in the January meeting, and that he could be denied the opportunity to participate in future meetings, because the CMHA has not granted his request to participate remotely via Zoom.

The CMHA argues that Plaintiff's case is "moot" because he never formally requested an accommodation until February 16, 2022, and after he did so, the CMHA allowed him to participate in February and March meetings remotely.  It then told him that he needed to submit medical documentation, such as a letter from his physician, to support future requests.  According to the CMHA, if Plaintiff provides the requested documentation, it will consider his accommodation request.  The CMHA apparently argues that it was not required to act until Plaintiff formally requested an accommodation, and it is not required to give that accommodation until Plaintiff provides medical documentation supporting the need for it.  In other words, according to the CMHA, it has acted in full compliance with the ADA.

The Court disagrees.  The evidence indicates that Plaintiff requested an accommodation in early January.  Even if Plaintiff did not use the word "request" or "accommodation" in his email

7

to Lurie, she could have inferred from the context that Plaintiff was requesting an accommodation on the basis of his disability, his asserted difficulty communicating while wearing a mask, and the risks associated with exposure to COVID-19. Indeed, the CMHA's Board Chair expressly recognized Plaintiff's concerns at the CMHA's January 20, 2022, meeting. Nevertheless, the CMHA did not allow Plaintiff to fully participate at that meeting. It did not require Plaintiff to provide medical documentation until March, after it received the attorney general's letter informing it of what it should have already known, which is that the ADA obligated it to accommodate individuals with disabilities.[2] (*See* Atty. Gen. Op. 7 (citing *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 163 (2d Cir. 2013).) Thus, the Court is satisfied that Plaintiff has shown a substantial likelihood of success that the CMHA discriminated against him in the past.

Moreover, Plaintiff's case is not moot because the CMHA has not granted his accommodation request for future meetings. The CMHA argues that it can require medical documentation before granting this request, but it cites no applicable law or precedent supporting this principle. It cites 42 U.S.C. § 12112(d)(4), which states:

> (A) Prohibited examinations and inquiries
>
> A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.
>
> (B) Acceptable examinations and inquiries
>
> A covered entity may conduct voluntary medical examinations, including voluntary medical histories, which are part of an employee health program available to employees at that work site. A covered entity may make inquiries into the ability of an employee to perform job-related functions.
>
> (C) Requirement

---

[2] Although the OMA does not contain exceptions for individuals with disabilities, the ADA preempts state law. The CMHA's ignorance of the law is not an excuse.

8

> Information obtained under subparagraph (B) regarding the medical condition or history of any employee are subject to the requirements of subparagraphs (B) and (C) of paragraph (3).

42 U.S.C. § 12112(d)(4).

The CMHA ostensibly relies on the provision stating that "[a] covered entity may make inquiries into the ability of an employee to perform job-related functions." *Id.* But as noted by Plaintiff, this entire section is found in Title I of the ADA, which applies to employers and employees. Plaintiff brings his claim under Title II, which applies to public entities. Also, there is no question that Plaintiff can perform the "functions" of his position. Thus, it is doubtful that this provision applies here.

Furthermore, considering what the CMHA already knows about Plaintiff's limitations, it is unlikely that medical documentation is necessary or reasonable in these circumstances. *See Marble*, 767 F. App'x at 652 n.2 (noting that a "covered entity may need to proactively institute accommodations where the need for accommodation is obvious" (quotation marks omitted)). The CMHA gave Plaintiff an accommodation for February and March, *before* receiving any such documentation. And its Board Chair apparently knew enough about Plaintiff's condition to point out the communication difficulties he would face if required to wear a mask. The Board Chair also recognized the health risks Plaintiff would face if he were required to attend without wearing one. Indeed, if the CMHA has a mask policy for all of its board members, it is not difficult to see how requiring one of them to attend meetings without a mask would impose additional health risks on that member, whether or not that member is particularly susceptible to complications from COVID-19.

In short, the CMHA's response to the preliminary injunction motion does not persuade the Court that Plaintiff's request is moot. Instead, the Court finds that Plaintiff has established a substantial likelihood of success on his claim.

**B. Irreparable Harm**

The Court agrees with Plaintiff that being unable to fully participate as a board member of the CMHA would cause him irreparable injury.  The CMHA insists that there will be no such injury because it will consider his request when he provides medical documentation.  However, at this point, it has not granted that request, and it does not indicate how long it would take to reach a decision.  Moreover, for the reasons discussed above, the Court is not persuaded that the CMHA can use its request for more information as a basis to deny or delay the requested accommodation.  It cites no applicable law for that principle.  Moreover, the evidence at this stage suggests that Plaintiff's need for the accommodation is somewhat obvious.

**C. Harm to Others**

Because the CMHA already has the capability of providing Plaintiff with remote access to board meetings, has operated remotely in the past, and must continue providing remote access to active-duty military members, the Court concludes that there would be little or no harm to the CMHA or anyone else by requiring the CMHA to allow Plaintiff to participate remotely.  In other words, such a requirement would not impose an undue burden on the CMHA or fundamentally alter its programs or services.[3]

The CMHA raises the concern that Plaintiff seeks the same accommodation for "similarly situated members of public boards and commissions"; however, Plaintiff is representing only himself in this action.  The Court cannot require the CMHA, or any other public entity, to give accommodations to those who are not parties to this lawsuit.  *See* Fed. R. Civ. P. 65(d)(2) (noting that a preliminary injunction order only binds the parties).

---

[3] A public entity is not required to make a reasonable modification if it can demonstrate that the modification "would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(7)(i).

The CMHA also contends that it must have an opportunity to reevaluate Plaintiff's request where there is a change in circumstances, such as when the pandemic or the "COVID-19 numbers" change. (Def.'s Resp. 15, ECF No. 17.) However, the Court does not foresee the risks associated with the pandemic changing dramatically in the near future. Indeed, the CMHA's current mask requirement itself suggests that the risks are ongoing. In any case, the CMHA can ask to dissolve the injunction if circumstances change in the future.

Finally, the CMHA contends that granting an accommodation could render its decisions void to the extent the accommodation does not comply with the OMA. The CMHA cites Mich. Comp. Laws § 15.270, which states that "a decision of a public body may be invalidated if the public body has not complied with the requirements of [the OMA.]" However, the OMA's requirements must give way to the ADA. Moreover, invalidation of the CMHA's decisions would require a showing that "noncompliance with the OMA has impaired the rights of the public." *Jude v. Heselschwerdt*, 578 N.W.2d 704, 707 (Mich. Ct. App. 1998). The CMHA does not explain how Plaintiff's virtual attendance and participation would impair the rights of the public. Nor could it make such a showing if military members can already participate remotely. Thus, the harm to the CMHA or others from the injunction would be minimal.

### D. Public Interest

The public interest would be served by permitting Plaintiff to continue full participation as a board member of the CMHA.

In summary, the relevant factors weigh in favor of granting an injunction requiring the CMHA to permit Plaintiff to participate in its board meetings virtually.

### E. Bond Requirement

Rule 65(c) states that a court issuing an injunction must require the movant to "give[] security in an amount that the court considers proper to pay the costs and damages sustained by

11

any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Although this language "appears to be mandatory," the Sixth Circuit has long held that the "district court possesses discretion over whether to require the posting of security." *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995). The Court declines to require security in this case because the considerations for an injunction weigh in Plaintiff's favor and the injunction would impose no meaningful burden on the CMHA.

## V. CONCLUSION

The Court will grant Plaintiff's request for a preliminary injunction and enter an order consistent with this Opinion.

Dated:  March 29, 2022                       /s/ Hala Y. Jarbou
                                             HALA Y. JARBOU
                                             UNITED STATES DISTRICT JUDGE